# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

BRADLEY E. BAGGE,                                     (
                                                      (
                        Plaintiff,                    (
                                                      (
        vs.                                           (
                                                      (
MANNATECH INCORPORATED;                               (
CRAIG M. HERMANSON, a/k/a Healthy                     (   Case No. _12.828 DSD/AJB_
Living Trust; VIVIAN GWIN, a/k/a The                  (
Development Group; DUANE BYE, a/k/a                   (   Judge:
Glyco Health;  BOBBIE WESTBEE,  a/k/a                 (
BJ Dins; DEAN & LINDA MCCILROY,                       (   Jury Trial Demanded
a/k/a DLM Glyco-ND; KATHLEEN                           (
HOLMES, a/k/a Diamond Gold; BELINDA                   (
NEIBEL, a/k/a Glycobelle; RUTH                        (
DOROSHUK; RUTH KNOBLICH, a/k/a                        (   COMPLAINT
Silent K Wellness; IRMA BITNER; CINDY                 (
LYN, a/k/a Sweet Success; and JOHN                    (
DOE(S),                                               (
                                                      (
                        Defendants.                   (
                                                      (

# COMPLAINT

COMES NOW, the plaintiff, Bradley E. Bagge, individually and as a Trustee of

Fleetwood Holdings, an inter vivos trust, will hereby state the following cause of action against

the above-named Defendants.  The Complainant shall demonstrate to the Court that he is entitled

to relief and the following allegations contained herein are based on the Complainant's personal


SCANNED
APR - 3 2012
Page 1 of 30
U.S. DISTRICT COURT MPLS

knowledge of the issues in and related to this cause of action and are made in good faith under penalty of perjury, <u>pursuant the provisions of 28 U.S.C. § 1746(2)</u>.

## I.   NOTICE OF PRO SE

1. Plaintiff notices the Honorable Court as being Pro Se in the initial stages of this cause of action.  Plaintiff has considerable personal 'hands-on' experience with various legal issues in state, federal, bankruptcy and supreme courts dating back to 1981; consisting in part, writ of prohibition, bankruptcies, Farm Credit Act of 1971, Consumer Credit Protection Act, Fair Debt Collections Practice Act, Securities Acts, Racketeer Influenced and Corrupt Organizations Act, breach of contract, breach of fiduciary duty, tying arrangements, extortionate credit transactions, fraud, wire & mail fraud, stock fraud, false statements to federal authorities, conspiracy to defraud the United States, ethics violations, civil RICO and a score or more of inconsequential defensive actions.  Over the years, Plaintiff has been represented by various law firms as well as representing himself in his own behalf.  Plaintiff will be retaining competent attorneys in this cause of action once the Plaintiff deems it necessary.

## II.   JURISDICTION AND VENUE

2. This civil cause of action arises under the laws of the United States.  This Court has jurisdiction pursuant to 28 USC § 1332(a)(1)(3) since the matter in controversy exceeds the value of $75,000 and the defendants are citizens of different States and Canada.  Plaintiff is alleging a violation of his rights under Title IX of the Organized Control Act of 1970, as amended, (18 USC § 1961 et seq.); fraud and related activity in connection with identification documents, authorization features and information; aggravated identity theft; making false statements; conspiracy; wire & mail fraud; unlawful access to stored communications; fraud and

related activity in connection with electronic mail; and violations of Minnesota Statute § 609.527 Identity Theft.

3.  Venue herein is proper under 28 USC § 1391(b) and 18 USC § 1965(a).

### III.   PARTIES

4.  Plaintiff, Bradley E. Bagge, is a citizen of the United States and currently resides at his legal mailing address of 1245 Angelo Drive, Golden Valley, Minnesota 55422.  Plaintiff, Bradley E. Bagge, hereafter referred to as ("Bagge"), is the Trustee of Fleetwood Holdings, holds undivided rights and interests in Fleetwood Holdings, is the Managing Member of Glyco International, LLC and Spearhead Technologies, LLC and is the principal controlling person for Glyco Wellness, LLP and Spearhead Wellness, a partnership, all existing under and by virtue of the laws of the State of Minnesota.  Individually and in conjunction with the above entities and others, Bagge has been a Mannatech Associate dating back to 2003.

5.  Defendant, Mannatech Incorporated, hereafter referred to as ("Mannatech"), is a global sales, marketing, manufacturing and distribution corporation existing under and by the virtue of the State of Texas, and maintains a legal business address of 600 South Royal Lane, Suite 200, Coppell, Texas 75019.

6.  Defendant, Craig M. Hermanson, a/k/a Healthy Living Trust, hereafter referred to as ("Hermanson"), is a citizen of the United States and currently resides at his legal mailing address of 1062 365th Avenue, Boyd, Minnesota 56218.  Hermanson purports himself to be a Mannatech Associate and a Mannatech Bronze Presidential Director.

7.  Defendant, Vivian Gwin, a/k/a The Development Group, hereafter referred to as ("Gwin"), is a citizen of the United States and currently resides at her legal mailing address of

186 Ridgemont Drive, Columbia, SC 29212-8691.  Gwin is a Mannatech Associate and is purported to be a Mannatech Executive Director.

8.  Defendant, Duane Bye, a/k/a Glyco Health, hereafter referred to as ("Bye"), is a citizen of the United States and currently resides at his legal mailing address of 815 W Central Ave, Bismarck, ND 58501-1308.  Bye is a Mannatech Associate and is purported to be a Mannatech National Director.

9.  Defendant, Bobbie Westbee, a/k/a BJ Dins, hereafter referred to as ("Westbee"), is a citizen of the United States and currently resides at her legal mailing address of 3704 Normandy St, Bismarck, ND 58503-5593.  Westbee is a Mannatech Associate and is purported to be a Mannatech National Director.

10.  Defendants, Dean & Linda McCilroy, a/k/a DLM Glyco-ND, hereafter referred to as ("McCilroy"), are citizens of the United States and currently resides at their legal mailing address of 4408 N Arlington Dr, Bismarck, ND 58503-7862.  McCilroy is a Mannatech Associate and is purported to be a Mannatech Regional Director.

11.  Defendant, Kathleen Holmes, a/k/a Diamond Gold, hereafter referred to as ("Holmes"), is a citizen of the United States and currently resides at her legal mailing address of 504 W Broadway Ave, Bismarck, ND 58501-3709.  Holmes is a Mannatech Associate and is purported to be a Mannatech Regional Director.

12.  Defendant, Belinda Neibel, a/k/a Glycobelle, hereafter referred to as ("Neibel"), is a citizen of the United States and currently resides at her legal mailing address of PO Box 655, 306 1st Ave NE, Mandan, ND 58554-0655.  Neibel is a Mannatech Associate and is purported to be a Mannatech National Director.

13. Defendant, Ruth Doroshuk, hereafter referred to as ("Doroshuk"), is a citizen of Canada and currently resides at her legal mailing address of PO Box 1117 STN Main, Rocky Mountain House, AB T4T 1A8. Doroshuk is a Mannatech Associate and is purported to be a Mannatech Regional Director.

14. Defendant, Ruth Knoblich, a/k/a Silent K Wellness, hereafter referred to as ("Knoblich"), is a citizen of the United States and currently resides at her legal mailing address of 2522 9th Ave N, Grand Forks, ND 58203-2279. Knoblich is a Mannatech Associate and is purported to be a Mannatech Regional Director.

15. Defendant, Irma Bitner, hereafter referred to as ("Bitner"), is a citizen of the United States and currently resides at her legal mailing address of 2200 80th St NE, Bismarck, ND 58501-8501. Bitner is a Mannatech Associate and is purported to be a Mannatech Regional Director.

16. Defendant, Cindy Lyn, a/k/a Sweet Success, hereafter referred to as ("Lyn"), is a citizen of the United States and currently resides at her legal mailing address of 5414 Calvert Drive, Bismarck, ND 58503-6470. Lyn is a Mannatech Associate and is purported to be a Mannatech National Director.

17. Defendant(s), John Doe(s), undetermined at this stage, but expected to be named after the discovery process is completed.

## IV.    STATEMENT OF THE CLAIM

18. This controversy arose in large part because Defendant Hermanson lied to Plaintiff Bagge, Hermanson lied to the group of North Dakota Defendants herein, Hermanson lied to

Defendant Mannatech and its agents and Hermanson lied to his former wife, Jonell R.
Hermanson.

19. It is my belief that Mannatech was <u>initially</u> mislead into becoming an unwitting

facilitator and ill-informed participant in an enterprise that has devised a scheme or artifice to

defraud, or for obtaining money or property from the Bagge Family by means of false or

fraudulent pretenses, representations, or promises in violation of their rights under Title IX of the

Organized Control Act of 1970, as amended, (18 USC § 1961 et seq.), and violations of

Minnesota Statute § 609.527 Identity Theft,  <u>among others</u>.

20. Even though Mannatech Incorporated may have been initially duped, it became an

active participant in the swindle and fraudulent activities and has, [without due process, without

showing cause or notice, and with a total breach of their fiduciary duty under the guise of

internal corporate color of law], cost Bagge and the Bagge Family tens of thousands of dollars in

income thus far, hundreds of thousands of dollars in personal property, hundreds of thousands of

dollars in future income and other irreparable damage as a result of their alleged conduct, in part

but not limited to, the following unethical or unlawful acts:

a.    Bagge & his family's businesses, all Mannatech Associates, were offered an opportunity
      during May 2008 by Jonell and Craig Hermanson to expand their Mannatech inter-related
      businesses.  Hermanson was a trusted long-time friend, business associate and purported
      Mannatech Presidential Bronze Director.

b.    The basic May 2008 agreement was for Bagge to terminate Fleetwood Holdings'
      Mannatech downline organization and establish a 'new' family LLC [Glyco International,
      LLC] sponsored directly under Jonell Hermanson and in the future offer up to fifteen (15)
      membership shares to proven Mannatech leaders [North Dakota Group – all Mannatech

Associates] to be chosen in the future by Craig Hermanson, thus creating a synergistic, active & performance driven sales downline to propel Jonell and Craig Hermanson to the Mannatech Platinum Director status.

c.    This May 2008 offer was a superb opportunity and a solid win-win, mutually beneficial business plan for the Bagge Family, the Hermanson Family and those that may get involved in the future from the 'to-be-determined' selected Mannatech Leaders (primarily from North Dakota).  Hermanson explained that other Mannatech Platinum Directors had used this business model to build their successful organizations.

d.    This offer also included Bagge's family limited liability company [Spearhead Technologies, LLC] to be enrolled as a new Mannatech associate as Glyco International, LLC's primary anchor leg account and in due course to receive dozens of new domestic and international Mannatech associates facilitated by Hermanson.  Hermanson was to receive expense reimbursements and a consulting fee from Spearhead equating to 50% of the anticipated net profits after all Spearhead's expenses including Hermanson's assistance and efforts in expediting Spearhead to reach the Presidential Director status in as short of time as possible, which would simultaneously qualify Jonell and Craig Hermanson as Mannatech Platinum Directors.

e.    Bagge agreed to Hermanson's May 2008 offer, established the Bagge Family's Minnesota-based Glyco International, LLC, *[See Glyco International, LLC's Articles of Organization - Exhibit 'A' attached hereunder and made a part herein]*, and at great expense moved Fleetwood Holdings' [The Bagge Family Living Trust] Mannatech downline to the 'new' Glyco International, LLC Mannatech Account 2710876 [established by Bagge] downline location [anchor leg position] and sponsored directly by

Jonell & Craig Hermanson. *[see Fleetwood Mannatech Organizational Structure - Exhibit 'B' attached hereunder and made a part herein]*

f.   **Unknown to Bagge**, Hermanson had made an agreement **prior** to May 2008 & **without Bagge's knowledge** with a North Dakota Group of Mannatech Associates [ND Defendants] to expand their domestic and international Mannatech inter-related businesses as well as be a quid pro quo payback in part for Hermanson's personal indebtedness to the individuals comprising this group of North Dakota Mannatech Associates.

g.   Except for an unsolicited encounter with Westbee & Gwin, Bagge was not introduced to nor had any contact or business-related discussions with the ND Defendants until July 20, 2009, which was fourteen (14) months after the Bagge Family established Glyco International, LLC's Mannatech Account 2710876 pursuant to Bagge & Hermanson's May 2008 agreement.

h.   From May 2008 through June 2009, Bagge completely performed on all aspects of the May 2008 agreement to move the Bagge Family Mannatech accounts and brought in approximately 27 new associates into the new Bagge Family's Glyco International, LLC downline, well above the proposed performance expectations. Conversely, Hermanson had fallen pathetically short of his performance promises including the failure to open up new international marketing territories and his failure to bring in new associates into Glyco or Spearhead's downline. Nevertheless, the proposed venture still had great potential and the opportunity could be still viable with some modifications and performance recommitments.

i.   In part, because of continuing IRS seizures, Jonell Hermanson became estranged with Craig Hermanson and moved out of their home. On or about the end of May 2009, Jonell

Hermanson filed divorce papers on Craig Hermanson. Jonell Hermanson's action left Hermanson in a desperate cash flow position. Hermanson appeared to be trapped, backed up against the wall and seemed not to have any obvious income sources available to meet his living expenses, operating cost demands and his commitments to the 'proposed' North Dakota Group or to Bagge.

j.   During June 2009, <u>to entice</u> Bagge and <u>recompense</u> Bagge's costs & losses as a result of Hermanson's failed promises and to deal with Hermanson's pending divorce, IRS problems, failed international marketing efforts and other non-performance issues involving the 'proposed North Dakota Group', Hermanson <u>requested</u> that Bagge move the Bagge Family Business LLC's Mannatech accounts, which were then located & sponsored directly under his wife Jonell, to yet another downline location directly under Hermanson's absolute control [Healthy Living Trust]. Hermanson also requested of Bagge that this whole divorce issue and circumstances, IRS issues and the moving of the Bagge Family downline <u>for the second time</u> not be mentioned or discussed with anyone in the 'proposed' North Dakota Group.

k.   To accomplish this, Hermanson offered Bagge two (2) of his alter ego accounts 1082010 & 1090063 for <u>**past**</u> and future consideration. This offer would <u>secure a cash flow</u> for Hermanson that would be outside the reach of the divorce settlement as well as <u>add a huge incentive</u> for the non-participating 'proposed' North Dakota Group in the acceptance & finalization of a Glyco set of by-laws and subscription offering. *[Over the years, Hermanson routinely used the "Alter Ego" doctrine as a tool to create alternative expedited solutions]*

l.  To comply with Mannatech rules to facilitate the proposed transfer and as the active and legal parent company of Glyco Wellness 'in-organization', Glyco International, LLC, Glyco Wellness' general partner though its managing member Bagge applied and received an IRS EIN SS-4 on 6/23/2009. *[See Glyco Wellness EIN SS-4 - Exhibit 'C' attached hereunder and made a part herein]*

m.  Bagge **relied** on Hermanson's promises, expertise and **special relationship with Mannatech** to <u>move</u> the Bagge Family Mannatech Business LLCs **for the second (2nd) time**, at a great cost of business disruption, loss of a dozen or more associates, loss of credibility and good will, <u>to another downline</u> directly under Hermanson's control [Healthy Living Trust] to secure a cash flow for Hermanson <u>not affected by the divorce</u>.

n.  Bagge gave Hermanson good and valuable **past** & future consideration and Bagge took possession of the two (2) alter ego Mannatech Accounts [1082010 & 1090063] from Hermanson on 6/23/2009 for the Hermanson requested <u>second</u> downline move to be located directly under Healthy Living Trust. *[see Fleetwood Mannatech Organizational Structure - Exhibit 'B' attached hereunder and made a part herein]*

o.  On 6/23/2009, Glyco International, LLC, through its managing member Bagge, accepted <u>Transferor</u> Craig Hermanson's offer to sell Mannatech Account 1082010, Bagge gave good and valuable consideration for Mannatech Account 1082010 and Bagge took possession of Mannatech Account 1082010 as <u>Transferee</u> for the benefit of Glyco International, LLC, the parent company and general partner of Glyco Wellness 'in-organization'.

p.  On 6/23/2009, Transferor Craig Hermanson executed the Position Transfer Request to Glyco Wellness 'in-organization' <u>to acknowledge the previous sale</u> and transfer of the

personal property, Account 1082010 to the Bagge Family. *[See Position Transfer Request & Application - Exhibit 'D" attached hereunder and made a part herein]*

q.   To complete the bargain, on 6/23/2009, Glyco International, LLC, through its managing member Bagge, duly listed Bagge as the contact person and as Transferee duly executed the Position Transfer Request for Glyco Wellness 'in-organization' and Bagge then faxed the completed document to Mannatech.

r.   On 6/23/2009, Glyco International, LLC, through its managing member Bagge, completed and executed the Mannatech Associate Application for Glyco Wellness 'in-organization' and Bagge then faxed the completed document to Mannatech.

s.   Mannatech did not speak or communicate whatsoever with Bagge during June & July 2009 regarding the Position Transfer Request or Application as submitted by Bagge for Account 1082010.

t.   If there was anything lacking or insufficient about the supporting documentation for the Position Transfer Request for Account 1082010 or Application required by Mannatech's polices and procedures, it was Mannatech's responsibility to request additional information or request additional documentation directly from Bagge, the signatory and submitted contact person.

u.   Mannatech did not request any additional documentation from Bagge or ask any additional questions of Bagge regarding Account 1082010.  The absence of any requests or questions confirms Mannatech's acceptance and legitimacy of the Position Transfer Request and Application as executed and presented by Black Letter Law.

v.     With the **direct sole collaboration** of Mannatech Presidential Hermanson, Mannatech
       Incorporated accepted the Bagge Family applications and approved the transfer requests
       for Mannatech Accounts 1082010 & 1090063 as executed and submitted by Bagge.

w.     To provide Defendant Hermanson with the future consideration as agreed to for Accounts
       1082010 & 1090063 in June 2009, Bagge provided, during the summer and early fall of
       2009, dozens of hours of strategic planning & support for Hermanson's divorce to include
       the preparation and drafting of all documents, memos, letters, affidavits, requests for
       documents, discovery and any necessary pleadings & court filings.

x.     On or about July 20, 2009 and at times thereafter, Bagge **started becoming aware** that
       Hermanson had personally borrowed tens of thousands of dollars from various individuals
       comprising the newly 'proposed' North Dakota Group [ND Defendants] and that
       Hermanson had promised the 'proposed' North Dakota Group [ND Defendants]
       membership shares in Bagge's Glyco International, LLC as a payoff and satisfaction in
       part of Hermanson's <u>personal</u> debt. This <u>had been completely unknown to Bagge</u> and was
       totally contrary to Bagge's understanding and agreement with Hermanson and thus
       unacceptable to Bagge <u>unless modified</u>.

y.     For years, Bagge had personal knowledge of confidential information that Hermanson was
       under continuing investigation by the IRS and had previously agreed to a plea bargain on
       past IRS issues.  Bagge believed Hermanson was being closely watched by the IRS and on
       extended probation.  **Bagge did not want to be involved in any financial entanglements**
       **with Hermanson that could be construed as a possible tax evasion scheme.**

z.     From July 2009 through February 2010, Bagge completely performed on all aspects of the
       June 2009 agreement to move the Bagge Family Mannatech accounts and brought in

approximately 23 new associates into the **'new'** Glyco Wellness 1082010 downline, directly under Healthy Living Trust. Bagge's performance was well above the proposed performance goals. Conversely, Hermanson <u>failed</u> to bring in any new associates into Spearhead's downline as promised. **Instead**, Hermanson generated dozens of new associates for those in the 'proposed' North Dakota Group [ND Defendants] and Hermanson's own family organization - Healthy Living Trust. *[see Fleetwood Mannatech Organizational Structure - Exhibit 'B' attached hereunder and made a part herein]*

aa.   On a number of occasions during the second half of 2009 and the first quarter of 2010, Bagge offered in good faith **multiple** creative <u>modified variations to merge</u> the two (2) different & conflicting understandings into a single workable and legal arrangement, but the 'proposed' North Dakota Group [ND Defendants] would not consider any of Bagge's good faith efforts and instead only wanted what Hermanson had promised them **prior to May 2008**, which was passive involvement, no performance requirements and quid pro quo ownership consideration.

bb.   To attempt to modify the apparent misconceptions and salvage the still mutually beneficial opportunity, Bagge offered the ND Defendants membership in Bagge's Glyco International, LLC's limited partnership Glyco Wellness that <u>required active</u> participation and performance standards & goals as well as <u>an acknowledgment</u> of the money lent to Hermanson; but the ND Defendants would not agree to sign a preliminary subscription agreement with those terms. **Instead**, the ND Defendants wanted an agreement that was <u>passive</u> in nature <u>without</u> performance standards & goals and <u>no mention</u> of the quid pro quo involving Hermanson's debt.

cc.   On or about February 17, 2010 during a heated conversation, Hermanson acknowledged the money he had borrowed from the ND Defendants and that he had borrowed it <u>before</u> offering the Bagge Family their opportunity in May 2008; and further, Hermanson demanded the partnership shares in Glyco Wellness would be in part a pay-back for his personal loans.  Hermanson also **threatened** Bagge that if Bagge did not go along with the ND Defendants' demands for membership in Bagge's Glyco International, LLC, Bagge would ruin or lose his Mannatech business without the ND Defendants' involvement.  Bagge refused Hermanson's demands.

dd.   Bagge then found out from Hermanson's estranged wife that Hermanson **had gambled-away** the vast majority of the tens of thousands of dollars he had previously received from the 'proposed' North Dakota Group and the fact that Hermanson **had not spent** tens of thousands of dollars for development costs and the international marketing efforts as <u>he had claimed</u>.  And lastly, she informed Bagge the reason for the divorce wasn't because she had turned into a lesbian as Hermanson had claimed, but it was because of his drinking, gambling and IRS problems.  It was now clear to Bagge that all of <u>Hermanson's</u> bogus claims, quid pro quo promises, past accommodations, preferential treatment, side-deals, kick-backs and convoluted arrangements involving the 'proposed' North Dakota Group and anything to do with the Bagge Family business <u>had to be terminated</u>.

ee.   Given all the **newly disclosed information** and **threat** and in order <u>to salvage</u> a lawful, reasonable, workable and potentially successful business relationship with the 'proposed' North Dakota Group that had already created anticipatory accounts in the Bagge Family 1082010 downline, Bagge <u>needed to eliminate</u> all the Hermanson generated <u>past</u> confusion, misconceptions, misinformation, unworkable & vague verbal agreements and

the past Hermanson promises & claims for unachievable outcomes. To accomplish this and **start anew from scratch**, Bagge noticed all the parties that **any and all previous** verbal discussions, notions, structures, relationships and understandings [real or perceived] between Bagge, Hermanson and the 'proposed' North Dakota Group should be considered null and void and unenforceable.

ff.   Once the group had been noticed, Bagge offered the ND Defendants **one last chance** on or about March 8, 2010 to become lawfully and equitably involved in Bagge Family's Minnesota LLC by **first stipulating** that each individual in the 'proposed' North Dakota Group would declare that its membership was not based on a quid pro quo and that the membership was not involved in anyway with the satisfaction of any debts involving Hermanson. This preliminary subscription offer was to expire on April 17, 2010.

gg.   On or about April 12, 2010, to cause in part for Bagge to possibly **capitulate** and **agree** to drop Bagge's preliminary subscription requirements for membership, Bagge alleges Hermanson made false and misleading representations to Defendant Mannatech because, **without cause or notice**, Defendant Mannatech facilitated Hermanson, Bye & Gwin in the alteration of material information contained in and the restriction of access to the Bagge Family's Glyco Wellness' Mannatech Account # 1082010 website.

hh.   **TAKE SPECIAL NOTE** - According to Mannatech Rules, the upline Presidential and/or the Enroller of Mannatech Accounts 1082010 & 1090063 has a number of capabilities to access and function as a quasi administrator of his downline accounts to make changes or alterations **without** the knowledge or authorization of the owner of the account. *[In this instance, Hermanson was both]*

ii.   After about 720 days of uninterrupted use of Glyco International, LLC's account and

subsequent Glyco Wellness Account 1082010, on or about 4/13/2010, and **about 4 days**

**before** the Bagge Family's Glyco International, LLC's membership offer to the 'proposed'

North Dakota group of Mannatech Associates to become limited partners in Glyco

Wellness, LLP **was to expire**, Glyco Wellness Mannatech Account 1082010 website was

accessed by an unknown & unauthorized source that made harmful and damaging material

changes to divert cash payments to the ND group of Defendants.

jj.   On April 16, 2010, Bagge noticed Defendant Mannatech of the unauthorized use of Glyco

Wellness Account 1082010, the disruption and/or diversion of funds and reminded them

of their fiduciary duty.  Mannatech was non-responsive and remained silent during this

time frame demonstrating their 'bad faith' complicity and dereliction of their fiduciary

duty to protect the Bagge Family personal property.

kk.   Unknown to Bagge at the time, Hermanson and ND Group had acquired a fictitious IRS

EIN on April 13, 2010 by making misrepresentations to the IRS.  *[See North Dakota*

*Glyco International, LLC EIN SS-4 dated 4/13/2010  - Exhibit 'E' attached hereunder and*

*made a part herein]*  During November 2011, a copy of the fictitious IRS EIN SS-4

*[Exhibit 'E']* was provided to Bagge by Mannatech Tax Department employee Paula

Randall to show Bagge what entity replaced Glyco Wellness during April 2010 as the

purported owner of Account 1082010.

ll.   During April 2010, if Mannatech, Hermanson or any of the 'proposed' ND Group

questioned, contested or challenged the legitimacy of Bagge or the Bagge Family

ownership rights to Account 1082010, the Statute of Frauds and the Uniform Commercial

Code are very specific on this issue and **a notice**, along with the **detailed grounds for**

**challenge or repudiation** must have been presented to Bagge or the Bagge Family and due process of law take place.  Any unilateral action involving the transfer of ownership is unlawful.

mm. Unknown to Bagge at the time, during April 2010, Hermanson and the 'proposed' ND Group made false representations to Mannatech that transferred Glyco Wellness Account 1082010 to a fictitious North Dakota entity known as Glyco International, LLC by the use of Identity Theft and other fraudulent means.  This **fraudulent transfer** of personal property was allowed to occur because Mannatech failed in their fiduciary duty to protect Glyco Wellness Account 1082010 for the Bagge Family.

nn. During April 2010, a fraudulent position transfer occurred without an authorized or legitimate Glyco Wellness owner or agent being made aware of or signing the Position Transfer Request as the Transferor.  Any unilateral action involving the transfer of ownership is unlawful.  This unlawful act was contrary to Mannatech's policy & procedure rules, the Statute of Frauds and the Uniform Commercial Code, which are very specific on this issue of title transfer.

oo. During April 2010, Mannatech allowed and Hermanson and the 'proposed' ND Group falsified Mannatech Account 1082010 information including but not limited to changing website passwords, e-mail address, postal address, telephone numbers, contact information, disclosure information and employer or taxpayer identification number for the purpose of theft, theft by swindle or fraud to unlawfully obtain Mannatech Account 1082010, Mannatech Account 1082010's by-weekly commission and bonus income and all rights and privileges associated with Mannatech Account 1082010.

pp.   This simple fact of Mannatech's <u>failure in their fiduciary duty and facilitating a unilateral</u>
<u>transfer of title</u> alone meets the requisite requirement for a violation of identity theft or
theft by fraud since it is synonymous with someone stealing a bank account, savings
account, certificate of deposit, stock account, annuity or any income producing account <u>by</u>
<u>just unlawfully changing</u> [without authorization or due process] the name, address and
other identifying information on the account <u>to divert its income stream</u>.

qq.   After a couple weeks, Mannatech responded & informed Bagge that their records
indicated a 'discrepancy' and that Bagge's name didn't appear on account 1082010.
They informed Bagge that they were going to investigate the matter and that Bagge should
provide them evidence that Bagge was indeed the owner/controlling person of Glyco
Wellness, Glyco International, LLC, the general partner of Glyco Wellness LLP and a list
of all the partners.

rr.   Mannatech's first response to Bagge's April 16, 2010 'NOTICE' of unauthorized and
harmful activities concerning Account 1082010 is a subterfuge and clear
misrepresentation of the facts since a <u>Mannatech employee has recently provided</u>
[November 2011] information from Mannatech's records that indicates that <u>Glyco</u>
<u>Wellness</u> was removed from Account 1082010 during April 2010.

ss.   Bagge provided Defendant Mannatech <u>prima facie evidence</u> of Bagge's ownership of
Glyco International, LLC and Glyco Wellness, LLP, but Defendant Mannatech ignored
the evidence of ownership and the numerous requests to return control of Glyco Wellness
Account 1082010 to its lawful owner, the Bagge Family.

tt.   On June 30, 2010, for the first time and twelve (12) months after the fact, Mannatech's
<u>final attempt at deception</u> was to claim that the transfer of Account 1082010 had been

denied back in June 2009 and never really existed as a Bagge Family property. Mannatech claimed it reverted account 1082010 back to the previous owner (Hermanson's alter ego), <u>which is untrue</u>. Website screen shots show it was changed to Glyco International, LLC and <u>Mannatech's own employee has confirmed that Glyco Wellness was removed by a **position transfer** in April 2010</u>. This fact also confirms the failure of Mannatech to provide Glyco Wellness with an IRS <u>2010</u> 1099-MISC Form, <u>which Mannatech is obligated by law to provide</u>.

uu.   Mannatech's attempted June 30th, 2010 cover-up version is further flawed since the account did not revert back to the previous owner Grinager in June 2009 and said contradiction is <u>confirmed by a Mannatech Tax Department employee</u>. The reality is that <u>Glyco Wellness</u> was unlawfully removed from Account 1082010 during April 2010 and <u>without due process, without showing cause or notice, and with a total breach of their fiduciary duty under the guise of internal corporate color of law</u>, Account 1082010 was **fraudulently transferred** to Defendant Bye & Glyco International, LLC, a fictitious North Dakota Limited Liability Company that did not legally exist until **<u>12/28/2010</u>**.

vv.   On or about 7/6/2010, Bagge provided Mannatech's Legal Department copies of the <u>original 6/23/2009 transfer documents, Glyco Wellness' IRS EIN, ten months of commission & bonus checks made payable to Glyco Wellness,</u> Mannatech Success Tracker records and Mannatech achievement awards all referencing Acct 1082010 and made out specifically to Glyco Wellness at its Minnesota registered office. Bagge also provided Mannatech with an email from Mannatech's Presidential Hermanson stating the transfer was complete and ready to go. This completely contradicted and destroyed

Mannatech Legal Department's three (3) different cover-up versions concerning Acct 1082010 and Bagge has not heard from Mannatech's Legal Department since.

ww.  After feeling confident that Defendant Mannatech had taken Bagge out of the picture, on July 7, 2010, Hermanson **threatened** Bagge again to do the same thing to Spearhead Wellness as he had done to Glyco Wellness if Bagge did not capitulate and give up Bagge's position.  Bagge answered Hermanson's email threat on July 12, 2010 & noticed Hermanson of Bagge's intentions and copied all parties in interest with a notice that Bagge would file criminal charges if any disruption or diversion of funds took place regarding Spearhead Wellness' account.

xx.  The Bagge Family's Leadership Upline for Spearhead Wellness 1090063, as presented on Mannatech's website, now contains Glyco International, LLC **instead of Glyco Wellness** as the owner of Account 1082010 with a phone number and an email address indicating one of the 'proposed' North Dakota members from the failed limited partnership offering, "Defendant Gwin".

yy.  North Dakota Secretary of State Records prior to January 2011 indicated that no entity existed in North Dakota named Glyco International, LLC.  However, eight months after the Identity Theft Swindle and the unauthorized and illegal changes that were made to Acct 1082010 during April 2010, the North Dakota Secretary of State Records now reveal that a North Dakota Glyco International, LLC was established on 12/28/2010 with a registered agent named Duane Bye of Bismarck, ND, "Defendant Bye".

zz.  When I asked Mannatech Tax Department employee Paula Randall where was Glyco Wellness' Account 1082010 2010 IRS 1099 for the period up to 4/13/2010, Paula stated in her 11/15/11 email, "Please note that doing a Position Transfer will generate 2 sets of tax

documents at the end of the year.  <u>One set for each tax ID (EIN)</u>."  Paula later advised that

Bagge seek legal advice.

aaa.  Accordingly, Acct 1082010 had to be supported by one of the Bagge Family business's

IRS EINs **during the complete 2010 tax reporting year**, (that were duly and lawfully

established by Bagge for these 2 entities), since the ND Glyco International, LLC didn't

exist until <u>12/28/2010;</u> and if it didn't exist, how could it have established a <u>lawful</u> IRS

EIN to support Acct 1082010 and <u>end up receiving the Bagge Family's 2010 IRS 1099</u>

that represented <u>all the Bagge Family 2010 income from Acct 1082010</u> that was

unlawfully diverted to the ND Group of Defendants?

bbb.  The ND Group of Defendants continue to this date to receive stolen property [unlawfully

diverted Mannatech Acct 1082010 by-weekly commission and bonus checks] from

Mannatech at their business address in Bismarck, North Dakota.

ccc.  Bagge has noticed the IRS and requested a 2010 IRS Form 1099 from Mannatech

supported by Bagge's EINs for the income Bagge received during 2010 before the Identity

Theft by Swindle took place in April 2010.   Additionally, Bagge has presented his

grievances and attempted to file criminal complaint petitions with the appropriate local,

state and federal authorities against the Defendants herein.   The state authorities have

informed Bagge that they are unable to proceed at this point because of problematic

jurisdictional issues and advised Bagge to rely on the federal agencies.  As of this date,

Bagge is not aware of any pending federal investigations from his efforts.

ddd.  A SHORT SUMMARY – Plaintiff Bagge and Jonell & Craig Hermanson entered into an

agreement in May 2008.  Plaintiff Bagge performed on all aspects of the May 2008

agreement.  Jonell Hermanson filed divorce papers in June 2009 thereby eliminating the

major portion of Craig Hermanson's income stream.  Hermanson requested that the Bagge

Family move its downline directly under Hermanson so Hermanson could share in the

commissions and bonuses generated by the Bagge Family Downline's performance and be

outside the reach of the pending divorce property settlement.  Bagge accepted the request

to move the Bagge Family downline and Hermanson and Mannatech facilitated the move

on or about June 23, 2009.  *[Unknown to Bagge at the time, Hermanson had personally*

*borrowed tens of thousands of dollars from various North Dakota Mannatech leaders*

*prior to the May 2008 agreement.]*  Early in 2010, Hermanson threatened Bagge and

attempted to extort equity shares of Bagge Family's Mannatech Account 1082010 to give

to this ND Group to repay in part Hermanson's personal debt to them.  Bagge refused, but

tried to work out a lawful compromise with the group.  The ND Group was intransigent

and did not want to participate in a compromise, subscription or operating agreement.

Hermanson then, during April 2010 and continuing thereafter, <u>conspired with Mannatech</u>

<u>and the ND Group to unlawfully take control of the Bagge Family Mannatech Account</u>

<u>1082010 by using various fraudulent means, including identity theft</u>.

## IV.   REQUEST FOR RELIEF / RICO

21.  The Plaintiff realleges and incorporates paragraphs 1 through 20 in haec verba.

22.  The Defendant Group is an enterprise engaged in and the activities of which affect

interstate or foreign commerce, to wit: Mannatech, Hermanson, Gwin, Bye, Westbee, McCilroy,

Holmes, Neibel, Doroshuk, Knoblich, Bitner, Lyn and John Doe(s) are a group of individuals

and entities associated in fact to provide domestic and international product sales, marketing,

manufacturing and distribution services.

23.  Defendants, Mannatech, Hermanson, Gwin, Bye, Westbee, McCilroy, Holmes, Neibel, Doroshuk, Knoblich, Bitner, Lyn and John Doe(s), as persons within the meaning of 18 USC § 1961(3) and as persons employed by or associated with said enterprise, conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 USC § 1962(c).

A)  A minimum of twenty (20) acts of Mail Fraud in violation of 18 USC § 1341 & 18 USC § 1342 all named participants in said acts having devised a common scheme or artifice to defraud property from the Plaintiff by means of false or fraudulent pretenses, representations or promises as follows:

a)  Mannatech and John Doe(s), individually, and acting in conjunction with Hermanson, Gwin, Bye, Westbee, McCilroy, Holmes, Neibel, Doroshuk, Knoblich, Bitner and Lyn, did from April 2010 and thereafter, knowingly place or cause to be placed in a Post Office or other authorized depository for mail matter, letters, marketing materials, reports and checks to be sent or delivered by the Postal Service to Defendant Bye and Gwin residing in North Dakota containing materials pertaining to Plaintiff Bagge's Mannatech Account 1082010, for the period of April 2010 and thereafter which were false and fraudulent.

b)  Bye and Gwin, individually and acting in conjunction with Mannatech, John Doe(s), Hermanson, Westbee, McCilroy, Holmes, Neibel, Doroshuk, Knoblich, Bitner and Lyn, did from April 2010 and thereafter, knowingly take or receive or cause to be taken or received from a Post Office or authorized depository for mail matter, letters, marketing materials, reports and checks pertaining to Plaintiff Bagge's Mannatech

Account 1082010, for the period of April 2010 and thereafter which were false and fraudulent.

c) Plaintiff Bagge believes that through discovery additional acts of mail fraud will be discovered including the mailing of false and fraudulent Internal Revenue Service Employer Identification Number (EIN) documents, false and fraudulent state and federal tax filings, false and fraudulent bank account(s) documents, false and fraudulent Minnesota and North Dakota Limited Liability Corporation disclosure documents, false and fraudulent Mannatech Application Forms & Position Transfer Requests and false and fraudulent Mannatech Form C-1 & C-2 disclosures.  Leave of Court will be requested after discovery is completed to amend this Complaint to conform to the evidence.

B) A minimum of two (2) acts, but estimated to be at least ten (10) acts, of Wire Fraud were committed in violation of 18 USC § 1343.  All named participants in said acts having devised, or intending to devise a scheme or artifice to defraud, or for obtaining money or property from the Plaintiff by means of false or fraudulent pretenses, representations, or promises and did devise a scheme of "Identity Theft by Swindle" of Plaintiff's Mannatech Account 1082010 to fraudulently acquire its director leadership status, its approximately 750 associate downline and its by-weekly income stream as follows:

a) Bye and Gwin, individually and acting in conjunction with Mannatech, John Doe(s), Hermanson, Westbee, McCilroy, Holmes, Neibel, Doroshuk, Knoblich, Bitner and Lyn, did from April 2010 and thereafter knowingly used the telephone and the internet to discuss business matters, share information and plan strategies pertaining to Plaintiff Bagge's Mannatech Account 1082010, for the period of April 2010 and thereafter which were false and fraudulent.

C) Two (2) acts of willfully Making False Statements in violation of 18 USC § 1001 & 18 USC § 371 with all named participants therein acting within the jurisdiction of a department or agency of the United States and each knowingly and willfully falsify, conceal or cover up by trick, scheme, or device a material fact, or make a false, fictitious or fraudulent statement or representation, or make or use a false writing or document knowing the same to contain a false, fictitious or fraudulent statement or entry as follows:

a) Mannatech and John Doe(s), individually, and acting in conjunction with Hermanson, Gwin, Bye, Westbee, McCilroy, Holmes, Neibel, Doroshuk, Knoblich, Bitner and Lyn did knowingly make statements and filed documents with the Internal Revenue Service and other state tax authorities pertaining to Plaintiff Bagge's Mannatech Account 1082010, for the period of April 2010 and thereafter, which were false and fraudulent.

D) A minimum of forty-six (46) acts of Identity Theft in violation of "Identity Theft Penalty Enhancement Act" as amended 18 USC § 1028A "Aggregated Identity Theft", 18 USC § 1028, 18 USC § 1037, 18 USC § 2701 & 18 USC § 2707 with all named participants therein acting within the jurisdiction of the United States and each knowingly and willfully transferred, possessed or used an identity that is not their own, with the intent to commit, aid, or abet unlawful activities as follows:

a) Mannatech and John Doe(s), individually, and acting in conjunction with Hermanson, Gwin, Bye, Westbee, McCilroy, Holmes, Neibel, Doroshuk, Knoblich, Bitner and Lyn, did from April 2010 and thereafter, knowingly and willfully by using false pretenses did falsify Mannatech Account 1082010 information including but not limited to changing website passwords, e-mail address, postal address, telephone

numbers, contact information, disclosure information and employer or taxpayer

identification number for the purpose of theft, theft by swindle or fraud to unlawfully

obtain Mannatech Account 1082010, Mannatech Account 1082010's by-weekly

commission and bonus income and all rights and privileges associated with Mannatech

Account 1082010.

24.  These seventy (70) or more acts of racketeering, occurring within ten years of one

another, constitute a pattern of racketeering activity within the meaning of 18 USC § 1961(5).

25.  Plaintiff was injured in his business or property by reason of this violation of 18 USC §

1962, in that, as a direct and proximate result of Defendant's complained of acts, Plaintiff

suffered damages, including lost commissions, lost bonuses, lost awards, lost personal property,

business disruption, financial creditability, business standing, degradation, emotional stress,

personal creditability and a source of livelihood and retirement security.  A dollar amount

estimated to be no less than Two Million Three Hundred Fifty Thousand Dollars

($2,350,000.00).

26.  WHEREFORE, by reason of the Defendants' violation of 18 USC § 1962, Plaintiff is

entitled, pursuant to 18 USC § 1964(c), to threefold the damages sustained or Seven Million

Fifty Thousand Dollars ($7,050,000.00), with interest thereof at twelve (12) percent (12%) per

annum, and a reasonable attorney's fee in connection herewith.

## V.    REQUEST FOR RELIEF / IDENTITY THEFT

27.  The Plaintiff realleges and incorporates paragraphs 1 through 26 in haec verba.

28. Plaintiff Bagge is a "direct victim" as described in Minnesota Statute § 611A.01, paragraph (b), whose identity has been transferred, used, or possessed in violation of MN § 609.527 "Identity Theft".

29. The Defendant Group is an enterprise engaged in and the activities of which affect interstate or foreign commerce, to wit: Mannatech, Hermanson, Gwin, Bye, Westbee, McCilroy, Holmes, Neibel, Doroshuk, Knoblich, Bitner, Lyn and John Doe(s) are a group of individuals and entities associated in fact to provide domestic and international product sales, marketing, manufacturing and distribution services.

30. Defendants, Mannatech, Hermanson, Gwin, Bye, Westbee, McCilroy, Holmes, Neibel, Doroshuk, Knoblich, Bitner, Lyn and John Doe(s), as persons within the meaning of MN § 609.527 Subdivision 2. and as persons employed by or associated with said enterprise, conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through theft, theft by swindle or fraud constituting an unlawful activity in violation of MN § 609.527 Subdivision 1(g).

31. Mannatech and John Doe(s), individually, and acting in conjunction with Hermanson, Gwin, Bye, Westbee, McCilroy, Holmes, Neibel, Doroshuk, Knoblich, Bitner and Lyn, did from April 2010 and thereafter, knowingly and willfully by using false pretenses did falsify Mannatech Account 1082010 information including but not limited to changing website passwords, e-mail address, postal address, telephone numbers, contact information, disclosure information and employer or taxpayer identification number(s) for the purpose of theft, theft by swindle or fraud to unlawfully obtain Mannatech Account 1082010, Mannatech Account 1082010's by-weekly commission and bonus income and all rights and privileges associated with Mannatech Account 1082010.

32.  Plaintiff was injured in his business or property by reason of this violation of MN §
609.527, in that, as a direct and proximate result of Defendant's complained of acts, Plaintiff
suffered damages, including lost commissions, lost bonuses, lost awards, lost personal property,
business disruption, financial creditability, business standing, degradation, emotional stress,
personal creditability and a source of livelihood and retirement security.  A dollar amount
estimated to be no less than Two Million Three Hundred Fifty Thousand Dollars
($2,350,000.00).

33.  WHEREFORE, that the said acts by the Defendants were done intentionally,
maliciously, unlawfully and with a conscious disregard of Bagge's rights and feelings.  That
Bagge, in addition to actual damages, is entitled to recover additional remedies pursuant to MN §
609.527 in the form of exemplary and punitive damages in a sum appropriate to cause the
Defendants, and others similarly situated, never to again repeat the above said wrongful acts,
said sum being presently unknown to Bagge, but estimated to be no less than Three Million
Dollars ($3,000,000.00), and depending upon the Defendants' assets, liabilities, and net worth
learned through discovery or trial, Bagge will request leave of Court to amend the pleadings to
confirm such proof.

## VI.    REQUEST FOR RELIEF

WHEREFORE, AS JUSTICE REQUIRES, Plaintiff Bradley E. Bagge prays on his own
behalf that this Honorable Court enter judgment against Defendants, Mannatech, Hermanson,
Gwin, Bye, Westbee, McCilroy, Holmes, Neibel, Doroshuk, Knoblich, Bitner, Lyn and John
Doe(s), each of them individually and collectively as follows:

1.  For threefold the damages actually sustained and the costs of suit, in a sum not less than Seven Million Fifty Thousand Dollars ($7,050,000.00), including a reasonable attorney's fee, pursuant to 18 USC § 1964(c) with interest thereon at the rate of twelve (12) percent (12%) per annum;

2.  For the damages actually sustained and the costs of suit, in a sum not less than Two Million Three Hundred Fifty Thousand Dollars ($2,350,000.00), including a reasonable attorney's fee, pursuant to MN § 609.527 with interest thereon at the rate of twelve (12) percent (12%) per annum;

3.  For exemplary and punitive damages and the costs of suit, in a sum not less than Three Million Dollars ($3,000,000.00), including a reasonable attorney's fee, pursuant to MN § 609.527 with interest thereon at the rate of twelve (12) percent (12%) per annum;

4.  For such other and further relief as the Court may deem appropriate pursuant to 18 USC § 1964 and MN § 609.527;

5.  For such other and further relief as the Court may deem proper and just in the premises.

6.  For trial by jury on all issues so triable.

Executed this 3 RD day of April 2012, I declare under penalty of perjury that the foregoing statements are true and correct pursuant the provisions of 28 U.S.C. §1746 (2).

APPEARING PRO SE

Bradley E. Bagge
1245 Angelo Drive
Golden Valley, MN  55422

## VERIFICATION

I, Bradley E. Bagge, a 'real party in interest' as provided by Fed. R. Civil P. 17(a) in the above-captioned matter, state under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief, pursuant the provisions of 28 U.S.C. §1746 (2).

Executed on April 3, 2012

Bradley E. Bagge
Individually and as Trustee of Fleetwood Holdings
1245 Angelo Drive
Golden Valley, MN  55422
(763) 588-3726